Jay T. Jambeck (SBN #226018)
Mandy G. Leigh (SBN #225748)
Damien B. Troutman (SBN #286616)
LEIGH LAW GROUP, P.C.
870 Market St., Suite 1157
San Francisco, CA 94102
Office: (415) 399-9155
Fax: (415) 795-3733
jjambeck@leighlawgroup.com

Attorneys for Plaintiffs,
GUNNAR ELLENBECKER,
CESAR ORTEGA, JR. and
N. ORTEGA

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUNNAR ELLENBECKER, CESAR ORTEGA, JR. and N. ORTEGA,<br><br>    Plaintiffs,<br>v.<br><br>SAN LUIS COASTAL UNIFIED SCHOOL DISTRICT,<br><br>    Defendant. | Case No.<br><br>**PLAINTIFF'S COMPLAINT FOR DAMAGES FOR:**<br><br>1. **VIOLATION OF TITLE IX;**<br>2. **VIOLATION OF TITLE VI**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs allege:

## **THE PARTIES**

1.  Plaintiff GUNNAR ELLENBECKER (sometimes hereinafter referred to as "Plaintiff Ellenbecker") resides in San Luis Obispo County, California.

2. Plaintiff CESAR ORTEGA, JR. (sometimes hereinafter referred to as "Plaintiff C. Ortega") resides in San Mateo County, California.

3. Plaintiff N. ORTEGA (sometimes hereinafter referred to as "Plaintiff N. Ortega"), a minor, resides in San Mateo County, California.

4. Defendant, SAN LUIS COASTAL UNIFIED SCHOOL DISTRICT ("SLCUSD," "District" or "Defendant") is a California governmental entity located in San Luis Obispo County that receives federal funding for the provision of educational services to school children.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1331, 20 U.S.C. § 1681, *et seq.* and 42 U.S.C. § 2000d.

6. Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391(b)(2) and (c) because Defendant is a resident of the Northern District of California or is considered a resident of this judicial district for the purposes of venue.

## GENERAL ALLEGATIONS

**A. *Allegations as to Gunnar Ellenbecker***

7. Plaintiff Ellenbecker was enrolled in and attended schools within the jurisdiction of SLCUSD for his entire primary and secondary education.

8. Plaintiff Ellenbecker participated in the sport of baseball, beginning in the youth league and continuing through into his primary and secondary years.

9. Until the time that he reached high school and the events set forth in this complaint transpired, Plaintiff Ellenbecker was a sought-after teammate, liked and respected by his teammates.

   i.   *Freshman year – 2016-2017 School Year ("SY")*

10. In Plaintiff Ellenbecker's freshman year, the 2016-17 School Year, the baseball season began in January 2017 and Plaintiff Ellenbecker was recovering from elbow surgery but continued to practice with the team. During a practice in February 2017, the Freshman team

coach referred to two players as "fags." Plaintiff Ellenbecker was offended at the gender-based comment by the Coach and after practice reported the name-calling, along with another player getting kicked in the butt by the same coach, to a SLCUSD Vice Principal.

11. A few days after reporting the incident to a SLCUSD Vice Principal, Plaintiff Ellenbecker and several other players on the team reported the name-calling and butt kicking incidents to the SLCUSD Athletic Director because their concerns about the incidents remained.

12. The next day, the Freshman team coach apologized to the team in front of the SLCUSD athletic director for his behavior.

13. That very same day at practice, the Freshman team coach made Plaintiff Ellenbecker run for telling the administration, even though Plaintiff Ellenbecker had a note from the doctor to refrain from physical activity due to his recovery from surgery on his elbow.

14. Despite the note, the Freshman Coach made Plaintiff Ellenbecker run for the next week until Plaintiff Ellenbecker again complained to the AD.

14. Shortly after Plaintiff Ellenbecker complained about the conduct of the Freshman Coach calling players "fags" and kicking a player in the butt, other players on the team began a constant campaign of name calling against Plaintiff Ellenbecker.

15. That same month, February 2017, Plaintiff was called "gay," as a slur, and a "pussy," a gender-based and derogatory term. At that time, Plaintiff recognized that he was being treated in such a manner for reporting the Freshman Coach to the administration as Plaintiff Ellenbecker had always had a good relationship with these same players throughout his years playing junior baseball.

16. The name calling continued by several players into March of 2017, with the terms "gay" and "fag" being utilized with frequency.

17. Initially, Plaintiff Ellenbecker was hesitant at this time to report these further incidents since his reporting had already generated negative reactions from both the Freshman Coach and a number of players.

18. However, in March of 2017, the name-calling continued without abatement, and Plaintiff Ellenbecker was again forced to report the behavior to an SLCUSD VP. Plaintiff Ellenbecker reported at that time that he was being called "gay," "fag," and "fat." The VP advised Plaintiff Ellenbecker that while he was sympathetic, he recommended to not to challenge the baseball administration as it would end his baseball career. The VP did advise Plaintiff Ellenbecker that he would try to show up twice a week to practice. The VP did so for about 30 minutes twice a week for about one month. While the name-calling ceased when the VP was present, it continued unabated in his absence.

19. Thereafter, the name-calling and harassment continued through the end of the school year.

*Sophomore year – 2017-2018 SY*

20. Baseball commenced in January 2018 with the same coach, this time coaching the junior varsity team, who singled out Plaintiff Ellenbecker and proceeded to make Plaintiff Ellenbecker run, stating "I just like watching you run because you're so fucking slow."

21. Soon after the commencement of the season, the name-calling commenced, with Plaintiff Ellenbecker referred to by other players as "gay" and "fat" and other stereotyped gender-related names.

22. Recalling the admonition from the VP the previous year, Plaintiff Ellenbecker did not initially report the name-calling to administration.

23. By March of 2018, the name-calling continued and was taking a toll on Plaintiff Ellenbecker's mental health. During that month, Plaintiff Ellenbecker reported to an assistant coach/teacher overseeing the baseball academic class at SLCUSD that he was being harassed with gender-based terms including "gay," as a slur. Although the teacher spoke with the varsity, junior varsity and freshman teams, the name calling continued after only a few days' respite.

24. In May of 2018, Plaintiff Ellenbecker's hydroflask was taken from his bat bag by another player who was a frequent harasser of Plaintiff Ellenbecker. The hydroflask was later

found smashed and thrown in a dumpster. Plaintiff Ellenbecker reported the theft, which had been posted to Snapchat by the offender, but the VP to whom it was reported claimed there was "no evidence" because the Snap had been deleted, despite the fact that witnesses existed to corroborate the theft and destruction of property. On information and belief, the administration failed to properly investigate the incident in retaliation for Plaintiff Ellenbecker's previous complaints.

25. Plaintiff Ellenbecker's sophomore year concluded with unabated name-calling and gender-based harassment by other players consistent with the allegations set forth above.

*Junior Year – 2018-2019 SY*

26. Plaintiff Ellenbecker's junior commenced with a new coach and Plaintiff Ellenbecker was told he would have significant playing time as a pitcher. Plaintiff Ellenbecker's hope was that the new year and new coach would alleviate the name calling, but it did not, and the gender-based name calling resumed.

27. In February 2019, Plaintiff Ellenbecker met with the assistant coach/teacher overseeing the baseball program about the ongoing gender-based harassment. If any steps were taken to alleviate the constant harassment, Plaintiff Ellenbecker was not aware of it and the harassment did not cease.

28. Later in February 2019, Plaintiff Ellenbecker was made aware that some other players had created a Snapchat account which purported to be owned by Plaintiff Ellenbecker and which contained naked pictures. Plaintiff Ellenbecker complained to SLCUSD administration and a VP called the boys into the office who denied making the account.

29. The gender-based name calling continued unabated. In April of 2019, Plaintiff Ellenbecker's phone was stolen by a teammate who eventually confessed but, on information and belief, received no discipline.

30. Later in April 2019, Plaintiff Ellenbecker and his mother set up a meeting with a SLCUSD VP, AD, and the coach/teacher overseeing baseball to again raise concerns about the

ongoing gender-based harassment, which had continued unabated. Plaintiff Ellenbecker's mother advised about the ongoing situation, including name-calling such as "gay," "fat," and "pussy," that had continued for three years and requested something be done about the harassment. Plaintiff Ellenbecker relayed similar comments. The AD stated he would address the players and get to the bottom of the issue.

31. Shortly after that meeting, the AD spoke to the players one time, but the gender-based harassment and name calling continued shortly thereafter.

32. In April 2019, as Plaintiff Ellenbecker was sitting on the bench getting ready for a game, a player who had previously harassed Plaintiff Ellenbecker slapped him in the face and punched him just below the eye. Plaintiff Ellenbecker could see the head coach, who was nearby and witnessed the battery, start laughing and walk away. Plaintiff Ellenbecker responded to the hit, with "what the f[] are you doing?" The teammate responded by stating if Plaintiff Ellenbecker told anyone, he would get his ass kicked. No punishment was given to the player for the battery.

33. The gender-based harassment continued through the end of the school year.

*Senior Year – 2019-2020 SY*

34. In his senior year, Plaintiff Ellenbecker attempted to get ahead of any harassment, hoping for a good final year of baseball, and set up a meeting with the Principal in January of 2020. Plaintiff Ellenbecker advised the Principal of the gender-based name calling that had been occurring for almost four years at that time. To Plaintiff Ellenbecker's knowledge, the Principal took no action based on his complaint. The gender-based name-calling and harassment continued thereafter.

35. In mid-February 2020, Plaintiff Ellenbecker, along with his mother and the Ortega's went to the Superintendent's Office and was directed to meet with a civil rights coordinator, Rick Mayfield (Mayfield). Plaintiff Ellenbecker told Mayfield that he was tired of being harassed and bullied by gender-based name calling, retaliated against and battered.

Mayfield stated he would handle the situation, but to Plaintiff Ellenbecker's knowledge, no investigation was completed from this complaint since he never received any findings and was never interviewed in detail about his experiences.

36. Plaintiff Ellenbecker's mother followed up with an email on February 17, 2020, where she raised some of the issues that were occurring at that time, along with reporting that Plaintiff Ellenbecker was being "bullied."

37. On February 18, 2020, Plaintiff Ellenbecker was called over by the baseball coaches before practice and told "I can't believe you told Mayfield that" and made to feel uncomfortable and ridiculed during practice for making a complaint to administration. Coach Miller then called Plaintiff Ellenbecker over and said "if you have an issue, you need to address it with me," while the other coaches surrounded Plaintiff Ellenbecker.

38. On February 19, Plaintiff Ellenbecker was accosted by a teammate prior to practice who said, "I heard you went to administration and the district office."

39. On February 22, 2020, a teammate slapped and then grabbed Plaintiff Ellenbecker's butt which embarrassed and made him feel uncomfortable.

40. On February 24, 2020, that same teammate, who is a black belt in karate, threatened to kick Plaintiff Ellenbecker's ass and then later that same day grabbed Plaintiff Ellenbecker's butt again.

41. On February 25, 2020, head coach Miller told Plaintiff Ellenbecker's mother and Plaintiffs Ortega-Garcia's parents that practice is closed, even though other parents are in the stands, in retaliation for complaints.

42. On March 23, 2020, a teammate who had previously harassed Plaintiff Ellenbecker with gender-based names approached him and shook his hand while he reached around and put his other finger as far up Plaintiff Ellenbecker's butt as he could. On information and belief, other teammates must have known this would happen as they immediately began to comment "See, we knew you were gay, you liked it" and "You will date a man."

43. On March 4, 2020, Plaintiff Ellenbecker reported the incident to an on-campus police officer.

44. On March 4, 2020, Plaintiff Ellenbecker was pulled out of class and into a meeting with Mayfield, Principal O'Connor and VP Mamo who proceeded to tell Plaintiff Ellenbecker that he was making up the bullying.

45. On March 5, 2020, the AD spoke to the team for the entire practice and advised them not to bully but also singling Plaintiffs out by asking whether *anyone else* had experienced any inappropriate touching.

46. On March 6, 2020, at a game, the head baseball coach told a player that he got to bat in his position in the lineup because he didn't snitch on the player who stuck his finger up Plaintiff Ellenbecker's butt.

47. Further on March 6, 2020, Plaintiff Ellenbecker was excluded by coach Miller from providing a "walk up song," a privilege given to other players.

### *Allegations as to Ortega Plaintiffs*

48. Plaintiff C. Ortega was in the same grade as Plaintiff Ellenbecker at a school governed by SLCUSD. Plaintiffs C. Ortega and N. Ortega, the younger brother of C. Ortega, also enrolled at SLCUSD, both witnessed the events related to Plaintiff Ellenbecker and were subjected to discriminatory acts by the coaches and administration.

*Senior Year 2019-2020 SY*

49. In the 2019-2020 SY, the Ortega's had recently transferred into the District and that year was their first year playing baseball in the District, but they were otherwise experienced baseball players and excellent athletes.

50. Prior to the first practice of the season, another Latino mother approached C. and N. Ortega's parents and during an initial discussion advised that concerns had arisen in the previous seasons with District administration and the baseball coaches regarding disparate

treatment of Latinos. C. Ortega's parents took her statements with a grain of salt and did not do anything in response at the time.

51. Beginning in C. Ortega's Senior year on the team, the 2019-2020 school year, the Coaches, and other players in the presence of the coaches, began to refer to C. Ortega and N. Ortega as "Team Mexico" in a derogatory manner and withheld preferential treatment from players of Latino descent. The name calling continued until the season was shortened by Covid-19 lockdown.

52. C. Ortega and N. Ortega were scrutinized by coaches and were made to run if they cursed or stepped out of line in any manner whereas the favored white players were allowed to act out and call other players terms like "gay" and "fag" and to curse and assault other players with impunity.

53. Additionally, C. Ortega and N. Ortega were intentionally overlooked in terms of working on their game despite the fact that they each are superior baseball players. C. Ortega was able to make a collegiate baseball team and N. Ortega is presently excelling in high school baseball, hitting .485 and pitching 87 mile per hour fastballs as a junior.

54. Because the coaches intentionally overlooked C. Ortega and N. Ortega in terms of developing their skills, just before the beginning Spring Ball, C. Ortega's and N. Ortega's father came to the practice fields after practice and accessed an open softball field, frequently used by other students without incident, in order to work with C. Ortega and N. Ortega and provide supplemental practice. When the baseball coaches discovered that this was occurring, they instructed a maintenance person to lock the softball field and keep C. Ortega and N. Ortega and their father off of the field. The maintenance worker then told the parents of C. Ortega and N. Ortega that the baseball coaches were insistent that the field be locked and that he had never received that request before in the time he worked for the District. Once the Ortega's stopped attempting to access the softball field, other students, including baseball players, were witnessed on the same field without incident.

55. During fall practice, Ortega's parents met with AD Brandow regarding their concerns about disparate treatment. Ortega's parents complained about the gender and racial remarks that were being utilized by players and coaches, that the phrase "Team Mexico" was being used, that coaches were overlooking their boys and that they felt it was discriminatory. The AD responded that he would look into it.

56. Based on a follow up meeting with the AD later that same week, it appears no investigation was undertaken but rather the AD spoke with the baseball coach regarding the allegations.

57. Based on the conversation that occurred, the baseball coaches began telling players to act differently when administration was observing, but let the status quo remain when administration was not present.

58. Further, in retaliation for the complaints by Ortega, the baseball coaches closed the practice to Ortega's parents, and not other parents, other than Ellenbecker, who had also made complaints. Ortega's parents were required to stay in the parking lot and not approach the baseball facility whereas other parents were witnessed hanging on the fence and sitting in the bleachers during the time practice was supposedly closed.

59. During the times when administration was not present, players would continue to engage in racial and gender-based name calling on a consistent basis.

60. Because complaining to the AD had no impact, Ortega's began to complain to District administration at the school level. This included a number of in-person meetings with the Principal and others where the issues regarding disparate treatment and ongoing racial and gender harassment were raised.

61. No investigation was commenced at the time into the allegations of disparate treatment or racial and gender harassment and the conditions for Plaintiff Ortega's did not improve.

62. At some point in the fall, a handwritten lineup card was discovered in the dugout with Ortega's names underlined and marked with asterisks. At the time, the coaches had C. Ortega hitting toward the end of the order despite the fact that he was a switch hitter hitting .350 right and .310 left and was being scouted collegiately and professionally whereas the players hitting in front of C. Ortega were generally not being scouted and, with the exception of one other player, did not go on to play collegiate ball like C. Ortega, who is the starting catcher at De Anza College.

63. N. Ortega, despite emerging but equal talent to his brother, was placed on the freshman team rather than varsity or even junior varsity, as would be expected given his skills.

64. Prior to Spring ball, Ortega's and Ellenbecker jointly met in person with Assistant Superintendent Mayfield regarding their complaints. Ortega's advised of the disparate treatment, including the written lineup card, the fact that practices were closed to them only, the racial and gender harassment, including "Team Mexico" and derogatory terms for homosexuals.

65. Mayfield commenced no formal investigation but said he would "find out what's going on," but nothing changed until an email complaining about their treatment as Mexicans was sent to another member of administration in March of 2020.

66. The District then conducted a belated, self-serving investigation that found no wrongdoing on the part of the District.

## FIRST CAUSE OF ACTION

## VIOLATIONS OF TITLE IX – FAILURE TO ADDRESS HARASSMENT

### (Ellenbecker against SLCUSD)

67. Plaintiffs incorporate and re-allege the allegations in paragraphs 1-67 above as though fully set forth herein.

68. SLCUSD received federal funds for its entire educational program.

69. Plaintiff ELLENBECKER was subjected to gender-based harassment and discrimination that was so severe and pervasive and objectively offensive, that it deprived him of

access to educational opportunities or benefits. The harassment was gender-based in that it was based on a perception of sexual orientation and/or of a male athletic stereotype.

70. SLCUSD had actual notice of the gender-based harassment.

71. SLCUSD was deliberately indifferent to the gender-based harassment, failed to adequately address the ongoing sexual harassment, and failed to take reasonably appropriate action under the circumstances known to SLCUSD.

72. As a direct and proximate result, Plaintiff suffered general damages, including severe emotional distress, embarrassment, humiliation, anxiety, and exacerbation of pre-existing conditions, including post-traumatic stress disorder.

## SECOND CAUSE OF ACTION

## VIOLATION OF TITLE VI

73. Plaintiff incorporates and re-alleges the allegations in paragraphs 1-67 above as though fully set forth herein.

74. The Civil Rights Act of 1964 prevents discrimination on the basis of race and national origin.

75. Plaintiffs C. Ortega and N. Ortega's national origin is Mexican and their race is Hispanic.

76. SLCUSD received federal funds for its entire educational program.

77. SLCUSD violated 42 U.S.C. § 2000d by intentionally discriminating against Plaintiffs C. Ortega and N. Ortega as a result of their race/national origin by its deliberate indifference to the harassment and bullying of said Plaintiffs and to the disparate treatment of said Plaintiffs by SLCUSD employees. SLCUSD had knowledge of and allowed for a pervasive, severe and objectively hostile environment regarding race to continue by failing to adequately address the racial harassment and bullying of said Plaintiffs along with disparate treatment. The harassment and bullying, along with the disparate treatment, based upon race, continued over the course of several years, despite complaints.

78. As a direct and proximate result of the disparate treatment, Plaintiffs suffered special and general damages, including stigmatization, loss of social companions and typical social opportunities, scorn, embarrassment, humiliation and lost athletic opportunities.

## JURY TRIAL

79. Plaintiff demands a jury trial on all matters by which a jury trial is afforded by right.

WHEREFORE, Plaintiff prays for the following:

1. General and Compensatory damages determined according to proof, but in an amount no less than $500,000;
2. Special damages in an amount to be shown by proof at trial;
3. Costs of this suit;
4. Attorneys' fees;
5. Other and further relief as the Court deems appropriate and just.

**Dated: July 19, 2022**　　　　　　　　　　**Leigh Law Group, P.C.**

/s/ Jay T. Jambeck
_____
Jay T. Jambeck
*Attorney for Plaintiffs*